IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 2:18-cv-1258 |
| CHRISTIE ROSETTA ROBINSON d/b/a CRR SERVICES, LLC, | |
| Defendants. | |

## COMPLAINT FOR PERMANENT INJUNCTION

Plaintiff, the United States of America, alleges as follows:

1.     The United States brings this complaint to enjoin Christie Robinson ("Robinson"), doing business as CRR Services, LLC ("CRR"), and any entity through which she conducts business, and all persons and entities in active concert or participation with her, from preparing or filing, or assisting in the preparation or filing of, any federal tax return for any other person or entity.

### Jurisdiction and Venue

2.     This action has been requested by a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to the provisions of 26 U.S.C. §§ 7402, 7407, and 7408.

3.     Jurisdiction is conferred on the Court by 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402(a).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the actions giving rise to this suit took place in this district.

15647270.2

5.      Robinson conducted business at 2736 Tifton Ave. in Kenner, LA.  Since 2008, Robinson has resided at 161 West Lakeview Drive in La Place, LA.

6.      On May 18, 2016, Robinson entered into a plea agreement with the United States Attorney for the Eastern District of Louisiana in *United States v. Christie Robinson* (2:15-cr-00083) in the United States District Court for the Eastern District of Louisiana, pleading guilty to four counts of making false statements on federal tax returns pursuant to 26 U.S.C. § 7206(1) and agreeing to be permanently enjoined under 26 U.S.C §§ 7402 and 7407 from preparing or filing (or assisting in preparing or filing) federal tax returns for anyone other than herself.  On August 17, 2016, judgment was entered against Robinson, and she was sentenced to five years probation.

**Robinson's Tax Return Preparation Activities**

7.      Robinson began preparing income tax returns in high school.  She worked with the Volunteer Income Tax Assistance ("VITA") program for at least three years before opening her own tax preparation business.

8.      In 2005, Robinson graduated from Delgado Community College with an associate's degree in accounting.

9.      In 2006, Robinson organized CRR as a business for preparing and filing income tax returns.

10.      Robinson is a tax return preparer as defined by 26 U.S.C. § 7701(a)(36). She prepared other people's Forms 1040 (U.S. Individual Income Tax Return) for compensation at least between 2009 and 2014.

11.      From 2009 through 2014 Robinson filed the following number of returns:

2

| Tax Year | Returns Filed per IRS Records |
|----------|-------------------------------|
| 2008 | 469 |
| 2009 | 740 |
| 2010 | 724 |
| 2011 | 387 |
| 2012 | 402 |
| 2013 | 337 |
| 2014 | 401 |

12.     Beginning in 2009 and until at least 2014, Robinson failed to include her personal return preparer information on the returns she commercially prepared, making her preparer activity more difficult to track.

13.     In 2015, the IRS suspended Robinson's Electronic Filing Identification Number ("EFIN") for violation of electronic filing requirements.

**Robinson's Unlawful Tax Return Preparation Practices**

14.     Robinson prepared returns using two schemes: 1) Robinson prepared, for paying customers, federal income tax returns (IRS Form 1040) typically containing fabricated Schedule C (Profit or Loss from Business – Sole Proprietorship) losses, false tax credits, false Schedule A (Itemized Deductions) deductions, and fabricated dependents; and 2) Robinson prepared returns for taxpayers without their knowledge, via identity theft ("ID theft"), with the returns typically reporting fabricated household employee wages and withholdings.

3

**Fabricated Schedule C Business Income and Expenses**

15.     Individual taxpayers who operate a business as a sole proprietorship must report the business' income and expenses on a Schedule C that is filed as part of the taxpayer's Form 1040. The net figure reported on a Schedule C, whether a profit or a loss, is a component of the taxpayer's adjusted gross income (along with any wage income, interest income, etc.).

16.     Robinson continually and repeatedly prepares federal income tax returns that included a fictitious Schedule C for customers.  By fabricating businesses and losses, Robinson understated the customers' taxable income and thus reduced the amount of tax owed to the IRS.

17.     This practice of manipulating the customers' income through fabricated Schedule C businesses, profits, or losses serves an additional purpose: it unlawfully renders customers eligible for the earned income tax credit ("EITC") and/or maximizes the EITC amount that customers claim.

18.     For customers whose actual income is too low to otherwise qualify for the maximum EITC, Robinson reports profits from the fake businesses on the Schedule C.

**Bogus Earned Income Tax Credits**

19.     Robinson repeatedly prepared tax returns that included bogus claims for the EITC, which is a refundable tax credit for working people who earn low to moderate incomes.  The amount of the ETIC available per taxpayer is based upon the taxpayer's income, filing status, and number of claimed dependents.  Because the EITC is a refundable credit, claiming it can reduce a taxpayer's federal tax liability below zero in

4

certain circumstances, thereby entitling the taxpayer to a payment from the United States Treasury.

20.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income.  The amount of the credit increases as income increases between $1 and $13,650, and decreases as income increases beyond $17,830.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot."  For tax year 2014, the maximum EITC was $6,143 and was available to eligible individuals with three dependent children who earned between $13,650 and $17,830.

21.     Robinson falsified the information reported on customers' tax returns as necessary to claim the maximum EITC for her customers.  For example, to bring a customer's adjusted gross income within the EITC "sweet spot," Robinson concocted businesses that she reported on a customer's Schedule C with corresponding profits or losses as necessary to increase or decrease the customer's taxable income.

22.     The IRS audited 51 tax returns between tax years 2009 and 2012 from 23 of Robinson's customers.  Of those 51 audits, 36 produced EITC adjustments.

### False Education Credits

23.     Robinson repeatedly reported false education expenses and falsely claimed education-related credits, such as the American Opportunity Credit and Lifetime Learning Credit, on customers' tax returns.  The American Opportunity Credit is a refundable credit that reduces taxable income and entitles taxpayers who do not owe

15647270.2

taxes to receive a payment from the government of up to $1,000.  The Lifetime Learning Credit is a nonrefundable credit of up to $2,000 available to offset the costs of higher education by reducing the amount of tax owed by a taxpayer.

24.     By claiming education credits for customers who did not actually attend college during the tax year at issue (if ever) and had no qualifying education expenses, Robinson unlawfully reduced her customers' tax liabilities and generated larger refunds.

### False Schedule A Deductions

25.     Robinson repeatedly falsified itemized deductions on customers' Schedules A, such as casualty loss and charitable contributions.  Casualty losses are losses which taxpayers may deduct on Schedule A based on damage done to their property during a sudden, unexpected or unusual disaster.  Taxpayers may deduct charitable contributions to organizations qualified under 26 U.S.C. § 170(c).

26.     By claiming deductions to which customers were not entitled, Robinson fraudulently decreased the amount of customers' taxable income reported on their tax returns.

### False Claims of Dependency Exemptions

27.     Robinson continually claimed false dependents on customers' tax returns.

28.     In falsely reporting dependents on customers' tax returns, Robinson inflated dependency exemptions, which further offset taxable income.

### ID Theft Scheme

29.     Regarding ID theft, Robinson obtained taxpayers' names and Social Security numbers and filed federal income tax returns without their knowledge or authorization.  Robinson would report false businesses on those taxpayers' returns.  She

6

would fabricate income, often household employee wages ("HSH income"), and claim expenses on the Schedules C without the taxpayers' knowledge. Robinson also commonly fabricated income tax withholdings on these returns. These taxpayers did not receive copies of the returns filed using their information or the refunds falsely claimed on the returns.

### Returns Prepared for Customers

#### Customer 1

30.    Robinson prepared 2008, 2009, and 2010 Forms 1040 for Customer 1. Robinson listed an individual Customer 1 did not know as a dependent on Customer 1's 2008 return. Robinson also listed Customer 1's brother as a permanently and totally disabled qualifying and dependent person on Customer 1's 2008 and 2009 returns. The brother was not disabled or a dependent. By including false dependents on Customer 1's 2008 and 2009 returns, Robinson claimed Customer 1 was entitled to earned income tax credits ("EITC").

31.    Robinson included false HSH income on Customer 1's 2009 and 2010 income tax returns. Customer 1 had been disabled since 2003 and did not tell Robinson she was a wage earner or a household employee for the years 2009 and 2010.

32.    Robinson charged Customer 1 about $300 per return and did not review the returns with Customer 1. Customer 1 received refund checks of $3,673, $4,244 and $2,704 to which she was not entitled.

#### Customer 2

33.    Robinson prepared a 2010 Form 1040 for Customer 2. Customer 2 was incarcerated for the first half of 2010, and, upon release, he lived in a halfway house. On

7

a tax return for a previous year, Robinson listed a friend with whom Customer 2 lived as a dependent on Customer 2's tax return.  Robinson offered to list the friend again as a dependent on Customer 2's 2010 return but did not ask Customer 2 any questions to determine if the friend was a qualified dependent for tax purposes in either year.

34.     Robinson then informed Customer 2 that, because another taxpayer had already listed the friend as a dependent, Customer 2 could not also claim the friend as a dependent.  Customer 2 provided Robinson with the name and Social Security number of another family member.

35.     Robinson filed Customer 2's 2010 return claiming the family member as a dependent and qualifying person for the EITC.  Robinson gave Customer 2 a copy of the 2010 return claiming, instead, the friend as a dependent.  Neither the friend nor the family member was a qualifying dependent entitling Customer 2 to the EITC.

36.     Robinson charged Customer 2 between $300 and $400 for preparing the 2010 tax return.  Robinson filed Customer 2's return claiming a bogus EITC of $2,831 and a total refund of $3,357 to which Customer 2 was not entitled.

**Customer 3**

37.     Robinson prepared 2009, 2010, and 2011 Forms 1040 for Customer 3. Robinson falsely reported that Customer 3 operated a sole proprietorship with gross income of $592 and $8,900 for 2009 and 2010, respectively.  Customer 3 did not tell Robinson that she operated a business.

38.     Robinson falsely claimed EITCs of $1,260 and $833 for Customer 3's 2009 and 2010 income tax returns, respectively.  Because Customer 3's 2009 and 2010

15647270.2

Schedule C income was fictitious, the IRS disallowed $1,102 of the 2009 EITC and disallowed the 2010 EITC in full.

39.     Robinson falsely reported that Customer 3 incurred qualifying education expenses for 2009, 2010, and 2011 and claimed credits of $1,193, $780, and $3,080, respectively.   Customer 3 did not tell Robinson that Customer 3 spent money on education in any of the three years, and did not produce documentation to support education expenses or credits.

40.     Robinson filed Customer 3's 2009, 2010, and 2011 returns claiming refunds of $4,166, $3,392, and $306, respectively, to which she was not entitled.

41.     The IRS' audit of Customer 3's 2009, 2010, and 2011 income tax returns produced respective deficiencies of $3,578.31, $2,781.64, and $2,465.81.  After the audit, Robinson requested that Customer 3 not mention the matter to anyone.

**Customer 4**

42.     Robinson prepared a 2010 Form 1040 for Customer 4.  Robinson falsely reported that Customer 4 incurred $6,300 in qualifying education expenses during the year.  Customer 4 did not spend money on education in 2010 and did not present any documentation concerning education expenses to Robinson.

43.     Robinson did not review the return with Customer 4 prior to filing.

44.     Robinson falsely claimed a refund of $1,313 on Customer 4's return.

**Customer 5**

45.     Robinson prepared 2010, 2011, and 2012 Forms 1040 for Customer 5. Robinson never met Customer 5 but received her tax information and documents through a mutual friend.  Robinson claimed false education credits on Customer 5's 2010 and

9

2011 returns. Customer 5 did not give Robinson any information concerning education expenses for 2010 or 2011.

46.     Robinson claimed bogus Schedule A deductions, including home mortgage interest and insurance premiums, a casualty loss, and charitable contributions, on Customer 5's 2012 return.  Customer 5 did not own a home, experienced no casualty loss, and made no charitable contributions during 2012.  Customer 5 did not tell Robinson she owned a home, had a casualty loss, or made charitable contributions in 2012.

47.     Robinson claimed fictitious deductible health savings account ("HSA") contributions of $2,980 on Customer 5's 2012 return.  Customer 5 was unfamiliar with the HSA program.

48.     Robinson did not review Customer 5's returns with her.  Customer 5 received refunds of $3,720, $4,323, and $3,982, respectively, to which she was not entitled.

**Identity Theft Returns**

49.     Robinson prepared and filed wholly fabricated tax returns using the identifying information of disabled and incarcerated taxpayers to claim fraudulent refunds.

*Disabled Taxpayers*

**Taxpayer 1**

50.     Robinson prepared and filed 2008 and 2009 Forms 1040 using the name and Social Security number of a disabled taxpayer ("Taxpayer 1").

15647270.2

51.     Robinson filed the bogus 2008 return showing HSH wages of $4,981 and withholdings of $907, and claiming a $381 EITC and a $1,288 refund.

52.     Robinson filed the bogus 2009 return showing HSH wages of $4,091 and withholdings of $1,009, and claiming a $1,009 refund.

53.     Taxpayer 1 had been disabled since approximately 2009 and had not filed an income tax return in 15-20 years.  Robinson prepared returns in Taxpayer 1's name showing a California address.  Taxpayer 1 never lived in California.

**Taxpayer 2**

54.     Robinson prepared and filed 2009 and 2010 Forms 1040 using the name and Social Security number of another disabled taxpayer ("Taxpayer 2").

55.     Robinson filed the bogus 2009 return showing HSH wages of $7,212 and withholdings of $1,224, and claiming a $150 Making Work Pay Credit, a $457 EITC, and a $1,831 refund.

56.     Robinson filed the bogus 2010 return showing wages of $7,012 and withholdings of $1,203, and claiming a $400 Making Work Pay Credit, a $457 EITC, and a $2,060 refund.

57.     Taxpayer 2 had been disabled since 1992.

58.     Taxpayer 2 did not give identifying information to a tax preparer in Louisiana, had no personal connection to the state, and did not live at the addresses shown on the 2009 and 2010 returns.

**Taxpayer 3**

59.     Robinson prepared and filed a 2010 Form 1040 using the name and Social Security number of a third disabled taxpayer ("Taxpayer 3").

15647270.2

60.     Robinson filed the bogus 2010 return showing HSH wages of $6,409 and withholdings of $1,291, and claiming a $397 Making Work Pay Credit and a $1,688 refund.

61.     Taxpayer 3 had been disabled since the 1990s and did not receive the $1,688 refund.

62.     Taxpayer 3 knew nothing about the preparation or filing of the return using his information.

*Incarcerated Taxpayers*

**Taxpayer 4**

63.     Robinson prepared and filed 2009 and 2010 Forms 1040 using the name and Social Security number of an incarcerated taxpayer ("Taxpayer 4").

64.     Robinson filed the bogus 2009 return claiming HSH wages of $3,706, withholdings of $931, and a $931 refund.

65.     Robinson filed the bogus 2010 return claiming wages of $4,994, withholdings of $1,011, and a $1,011 refund.

66.     Taxpayer 4 was incarcerated in 2009 and could not have earned wages as a household employee during that tax year.

**Taxpayer 5**

67.     Robinson prepared and filed a 2010 Form 1040 using the name and Social Security number of another incarcerated taxpayer ("Taxpayer 5").

68.     Robinson filed the bogus 2010 return claiming HSH wages of $6,878, withholdings of $1,955, a $400 Making Work Pay Credit, a $457 EITC, and a $1,688 refund.

15647270.2

69.    Taxpayer 5 never filed a tax return and worked "under the table." Taxpayer 5 did not live at the address claimed on the tax return Robinson prepared and filed.

**Taxpayer 6**

70.    Robinson prepared and filed a 2010 Form 1040 using the name and Social Security number of another incarcerated taxpayer ("Taxpayer 6").

71.    Robinson filed the bogus 2010 return claiming HSH wages of $8,621, a $400 Making Work Pay Credit, a $2,933 EITC, an additional Child Tax Credit of $843, and a $4,176 refund.

72.    Taxpayer 6 was incarcerated in 2010 and could not have earned wages as a household employee during that tax year.

**Robinson's Criminal Conviction**

73.    On April 2, 2015, Robinson was indicted on four counts of false statements on a tax return (2007, 2009, 2010, and 2011) pursuant to 26 U.S.C. § 7206(1) (fraud and false statements) and three counts of aggravated identity theft pursuant to 18 U.S.C. § 1028A(a)(1) during and in relation to wire fraud under 18 U.S.C. § 1343. *United States v. Christie Robinson*, Case No. 2:15-cr-00083-ILRL-KWR (E.D. La.).

74.    Robinson pled guilty to four counts of false statements on a tax return. Judgment was entered against her on August 17, 2016.  In her Plea Agreement executed on May 18, 2016, Robinson agreed to the following conditions:

> Defendant agrees, as part of this plea agreement, to be permanently enjoined under [26 U.S.C.] §§ 7402 and 7407 from preparing or filing (or assisting in preparing or filing) federal tax returns for anyone other than herself.  Defendant understands that the United States will file a civil complaint against her in federal district court seeking this relief, and defendant agrees to consent to a permanent injunction in that civil lawsuit.

13

75.    Pursuant to the criminal judgment against her, Robinson was ordered to pay restitution of $104,481.40 and was sentenced to five years' probation.

**Harm Caused by Robinson**

76.    Robinson's tax return preparation business has harmed her customers, the United States, and the public.

77.    Robinson has harmed her customers by charging fees for the preparation of accurate tax returns while preparing tax returns with fabricated or exaggerated items that understate customers' tax liabilities and claim refunds to which the customers were not entitled.  In doing so, Robinson has caused her customers to incorrectly report their federal tax liabilities and underpay their taxes.  The IRS has audited many of these customers who face large tax deficiencies from the adjustments and may be liable for sizeable penalties and interest.

78.    Robinson harms taxpayers by using their identities to prepare and file returns with false tax attributes to claim refunds to which they are not entitled.  This activity prevents taxpayers from filing accurate returns for themselves and increases tax administration and enforcement costs for the United States.

79.    Robinson's conduct harms the United States by the loss of substantial tax revenue.  Robinson consistently underreported customers' tax liabilities and claimed bogus refunds on behalf of her customers.  The IRS audited a total 51 tax returns Robinson prepared for 23 customers.  These 51 examinations resulted in a total tax deficiency of $226,152 or an average deficiency of $4,434 per return.  Robinson prepared over 2,700 returns for tax years 2008 through 2012, so the total revenue loss caused by Robinson is likely far greater and could be as large as $8,758,610.

14

80.     Robinson's unlawful practices further harm the United States because the IRS must devote its limited resources to investigating her activities.  The IRS expends time and resources to ascertain Robinson's customers' correct tax liabilities, recover any refunds erroneously issued, and collect any additional taxes and penalties.

81.     In addition to the direct harm Robinson caused by preparing flagrantly false returns that understate her customers' tax liabilities and inflate their refunds, Robinson's activities undermine the public confidence in statutory credits meant to encourage low-income workers with young children to maintain employment and attain higher education.  Robinson's activities undermine the administration of the federal tax system and encourage non-compliance with the federal tax laws.  Robinson also undermines her customers' knowledge of proper tax preparation practices by failing to review or explain entries on her customers' tax returns.

82.     Robinson's illegal conduct also harms honest tax return preparers because by preparing tax returns that unlawfully inflate her customers' refunds, Robinson gains an unfair competitive advantage over tax return preparers who prepare returns in accordance with the law.  Customers who are satisfied with the tax refunds that they receive-but are often unaware of Robinson's illegal return preparation practices returned to Robinson's store for subsequent tax seasons.

83.     Given the seriousness and pervasiveness of Robinson's illegal conduct and that she has operated her business this way since at least 2006 without remorse, Robinson is likely to continue preparing false tax returns for customers after her probation ends unless she is enjoined.  An injunction will serve the public interest by putting a stop to Robinson's illegal practices and the extensive harm resulting therefrom and ensure that if

15647270.2

Robinson prepares returns in the future, the court can address that through its power of civil or criminal contempt.

## COUNT I – Injunction under 26 U.S.C. § 7407

84.    The United States incorporates by reference the allegations in paragraphs 1 through 83.

85.    26 U.S.C. § 7407 authorizes a court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 when that injunctive relief is appropriate to prevent the recurrence of the conduct.  Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct and that a narrower injunction (*i.e.* prohibiting only such specific conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer.  The prohibited conduct justifying an injunction includes, among other things, the following:

A. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

B. Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a return preparer who, among other conduct, recklessly or intentionally disregards IRS rules or regulations;

C. Engaging in conduct subject to penalty under 26 U.S.C. § 6695, which penalizes a return preparer who, among other conduct, fails to furnish a copy of a return to the customer or fails to be diligent in determining eligibility for the EITC; and

D. Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws. *See* 26 U.S.C. § 7407(b)(1)(D).

16

86.     Robinson continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by preparing returns that she knew understated her customers' federal tax liabilities.

87.     Robinson understated her customers' correct tax liabilities through her failure to conduct the required due diligence and, therefore, improperly claimed deductions and credits, including the EITC, on behalf of her customers, and engaged in conduct subject to penalty under 26 U.S.C.  §§ 6694 and 6695(g).

88.     Robinson, by using taxpayers' identities without consent to fraudulently prepare and file returns claiming refunds, has engaged in fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws. 26 U.S.C. § 7407(b)(1)(D).

89.     Injunctive relief is appropriate to prevent this misconduct because, absent an injunction, Robinson is likely to continue preparing and filing false or fraudulent federal income tax returns of the type described in this complaint, and listing improper or fabricated and fraudulent earnings, expenses, filing statuses, deductions, and credits on returns she prepares.

90.     Further, such continual and repeated violations of the internal revenue laws, including the audacious use of fictitious Schedule C businesses, bogus claims for education credits, and fraudulent EITC claims, underscore that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Robinson's interference with the proper administration of the internal revenue laws.  Robinson continued to prepare and file income tax returns listing fake Schedule C businesses and

17

claiming false credits and deductions even after she knew that she was under investigation by the IRS for her tax return preparation practices.

91.     If she is not fully enjoined, Robinson is likely to continue to prepare and file false tax returns, causing economic harm to the United States, requiring the United States to commit finite and unrecoverable resources to the examination of Robinson's customers' returns, and exposing such customers to large liabilities that include penalties and interest.

92.     Robinson should be permanently enjoined under 26 U.S.C. § 7407 from acting as a tax return preparer.  Her repeated and continual conduct subject to injunction under 26 U.S.C. § 7407 demonstrates that a narrower injunction prohibiting specific misconduct would be insufficient to prevent her interference with the proper administration of the internal revenue laws.

**COUNT II – Injunction under 26 U.S.C. § 7408**

93.     The United States incorporates by reference the allegations in paragraphs 1 through 92.

94.     26 U.S.C. § 7408 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

95.     26 U.S.C. § 6701 penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used, it will result in an understatement of another person's tax liability.

96.     Robinson prepared tax returns she knew or should have known would understate her customers' correct tax liabilities.  Robinson knowingly prepared federal tax returns claiming false or inflated deductions, EITCs, and education credits.  Robinson knowingly created fictitious Schedule C businesses and reported fabricated profits or losses.  Robinson is thus subject to penalty under 26 U.S.C. § 6701(a).

97.     Robinson has engaged in this conduct in preparing thousands of returns over multiple years.  If the Court does not enjoin Robinson, she is likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701.  Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

### COUNT III – Injunction under 26 U.S.C. § 7402

98.     The United States incorporates by reference the allegations in paragraphs 1 through 97.

99.     26 U.S.C. § 7402 authorizes courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws."  The remedies available to the United States under the statute "are in addition to and not exclusive of any and all other penalties." 26 U.S.C. § 7402(a).

100.    Robinson, through the actions described above, has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws.  She is likely to continue to engage in such conduct unless enjoined.

101.    Robinson's conduct caused irreparable injury to the United States and an injunction under 26 U.S.C. § 7402(a) is necessary and appropriate.  If Robinson is not enjoined from preparing tax returns, the United States will suffer irreparable injury by erroneously providing tax refunds, which the United States may never recover, to persons

19

not entitled to receive them and by taxpayers not reporting and paying the correct amount of taxes.

102.    Unless Robinson is enjoined, the IRS will have to continue to devote substantial time and resources to identify and locate her customers, and then examine those customers' tax returns and property records.

103.    Enjoining Robinson is in the public interest because an injunction should stop her illegal conduct and the harm it causes the United States and her customers.

104.    The Court should therefore order injunctive relief under 26 U.S.C. § 7402(a).

**Relief Sought**

WHEREFORE, the United States of America requests the following relief:

A.    The Court find that Robinson has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and other deceptive conduct that substantially interferes with the proper administration of the tax laws; that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct; and that injunctive relief limited to prohibiting such conduct would not be sufficient to prevent Robinson's interference with the proper administration of the Internal Revenue Code, and bar her from acting as a federal tax return preparer or operating any business that prepares federal tax returns;

B.    The Court find that Robinson has engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

20

C.      The Court find that Robinson has engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief against her and anyone acting in concert with her is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

D.      The Court, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408, enter a permanent injunction prohibiting Robinson from:

1.   acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than herself;

2.   owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

3.   training, advising, counseling, instructing, or teaching anyone about the preparation of federal tax returns;

4.   maintaining, transferring, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an (EFIN);

5.   selling, transferring, assigning, disseminating, providing, or giving to any individual or entity a list of customers, or any other customer information of Robinson's or any individual acting at her direction;

6.   engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

7.   engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws;

E.      The Court, pursuant to 26 U.S.C. § 7402, enter an injunction requiring Robinson, at her own expense, to:

1.   immediately and permanently close all tax return preparation stores that Robinson owns through any entity, whether those stores do business as CRR Services or under any other name;

21

    2.   send by U.S. mail or email a copy of the final injunction entered against her in this action to each person for whom she prepared federal tax returns or any other federal tax forms after January 1, 2013;

    3.   keep records of Robinson's compliance with the foregoing directives, which may be produced to the Court, if requested, or to the United States pursuant to paragraph G, below; and

    4.   file with the court, within 45 days of the date on which the permanent injunction is entered, a sworn certificate evidencing Robinson's compliance with the foregoing directives;

F.    The Court, without further proceedings, authorize the IRS to immediately revoke any EFIN and PTIN held by, assigned to, or used by Robinson;

G.    The Court enter an order allowing the United States to monitor Robinson's compliance with the injunction and to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure in order to monitor compliance with the Court's injunction; and

H.    The court retain jurisdiction over Robinson and over this action to enforce any permanent injunction entered; and

I.    The Court grant the United States such other and further relief as the Court deems appropriate.

//

//

//

//

//

//

//

22

15647270.2

Dated: February 7, 2018

DUANE A. EVANS
Interim United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney
General

/s/Julian T. A. Lee
JULIAN T. A. LEE
NY Bar Number: 4523684
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C.  20044
202-307-6140 (o)
202-514-6770 (f)
Julian.Lee@usdoj.gov
*Attorney for United States*

15647270.2

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Christie Rosetta Robinson d/b/a CRR Services, LLC |

| (b) County of Residence of First Listed Plaintiff n/a | County of Residence of First Listed Defendant n/a |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Julian T. A. Lee<br>US Dept. of Justice Tax Division, PO Box 7238<br>Washington, DC 20044  (202) 307-6140 | n/a |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS**<br>☒ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. 7402, 7407, and 7408

Brief description of cause:
Complaint to permanently enjoin tax return preparer

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE _____ DOCKET NUMBER _____

DATE  02/07/2018

SIGNATURE OF ATTORNEY OF RECORD  /s/ Julian T.A. Lee

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.